No. 21-20269

# In the United States Court of Appeals for the Fifth Circuit

Dwight Russell; Johnnie Pierson; Joseph Ortuno; Maurice Wilson; Christopher Clack,

*Plaintiffs-Appellees*,

*v.*

Judge Hazel B. Jones; Nikita Harmon; Robert Johnson; Kelli Johnson; Randy Roll; DaSean Jones; Abigail Anastasio; Jason Luong; Greg Glass; Frank Aguilar; Chris Morton; Josh Hill; Hilary Unger; Amy Martin; Herb Ritchie; Ramona Franklin; Jesse McClure III; George Powell; Brock Thomas; Colleen Gaido; Ana Martinez,

*Movants-Appellants*.

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division

## BRIEF FOR MOVANTS-APPELLANTS

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

William F. Cole
Assistant Solicitor General
William.Cole@oag.texas.gov

Counsel for Movants-Appellants

# Certificate of Interested Persons

No. 21-20269

Dwight Russell; Johnnie Pierson; Joseph Ortuno; Maurice Wilson; Christopher Clack,

*Plaintiffs-Appellees,*

*v.*

Judge Hazel B. Jones; Nikita Harmon; Robert Johnson; Kelli Johnson; Randy Roll; DaSean Jones; Abigail Anastasio; Jason Luong; Greg Glass; Frank Aguilar; Chris Morton; Josh Hill; Hilary Unger; Amy Martin; Herb Ritchie; Ramona Franklin; Jesse McClure III; George Powell; Brock Thomas; Colleen Gaido; Ana Martinez,

*Movants-Appellants.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/ William F. Cole
William F. Cole
*Counsel of Record for Movants-Appellants*

i

## Statement Regarding Oral Argument

Appellants request oral argument. This case involves a question of first impression in this Circuit regarding the application of the state sovereign immunity doctrine to third-party subpoena proceedings against state judicial officials. It also involves the application of the doctrine of judicial immunity, Federal Rule of Civil Procedure 45(d), and the mental processes rule to the same set of facts. Given the complexity of the issues, oral discussion of the facts and applicable precedent would aid the Court's decisional process.

# Table of Contents

Page

Certificate of Interested Persons ..................................................... i

Statement Regarding Oral Argument ................................................ ii

Table of Authorities ....................................................................... v

Introduction ................................................................................... 1

Statement of Jurisdiction .................................................................. 3

Issues Presented ............................................................................. 3

Statement of the Case ..................................................................... 4

   I.   Statutory Background. .......................................................... 4

   II.   Procedural History ............................................................... 5

       A.   Plaintiffs file suit against the Felony Judges and obtain
           expedited discovery; the Felony Judges move to dismiss. ................... 5

       B.   The district court denies the Felony Judges' motion to
           dismiss, the Felony Judges appeal, and the parties agree to
           dismiss the appeal following the panel's decision in *Daves*. ............... 6

       C.   Plaintiffs serve third-party subpoenas, the Felony Judges
           move to quash, and the district court denies the motion. ................... 7

Summary of the Argument ............................................................... 9

Standard of Review ....................................................................... 11

Argument ..................................................................................... 12

   I.   The Felony Judges Are Entitled to Sovereign Immunity. ......................... 12

       A.   Third-party subpoenas are "suits" to which sovereign
           immunity attaches. .......................................................... 12

       B.   District courts may not "balance" away state sovereign
           immunity with the Federal Rules of Civil Procedure. ........................ 18

   II.   The Felony Judges Are Judicially Immune from Suit. ............................. 19

   III.  Plaintiffs' Third-Party Subpoenas Unduly Burden the Felony
       Judges, and the District Court Erred in Failing to Quash Them. ............... 23

   IV.  The Mental Processes Rule Bars Enforcement of the Deposition
       Subpoenas. ..................................................................... 29

Conclusion ........................................................................................... 31

Certificate of Service ......................................................................... 32

Certificate of Compliance ................................................................. 32

# Table of Authorities

Page(s)

**Cases:**

*Alden v. Maine*,
  527 U.S. 706 (1999) .................................................................. 19, 25

*Alltel Commc'ns, LLC v. DeJordy*,
  675 F.3d 1100 (8th Cir. 2012) ...................................9, 13, 14, 15, 17, 28

*Ayestas v. Davis*,
  138 S. Ct. 1080 (2018) ..................................................................20

*Barnes v. Black*,
  544 F.3d 807 (7th Cir. 2008) ........................................................ 16

*Bonnet v. Harvest (U.S.) Holdings, Inc.*,
  741 F.3d 1155 (10th Cir. 2014) ................................... 9, 13, 14, 15, 16

*Boron Oil Co. v. Downie*,
  873 F.2d 67 (4th Cir. 1989) ..................................................... 9, 14, 28

*Brewer v. Blackwell*,
  692 F.2d 387 (5th Cir. 1982) ......................................................... 11

*Caliste v. Cantrell*,
  937 F.3d 525 (5th Cir. 2019) ..........................................................22

*CF Indus., Inc. v. DOJ, Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  692 F. App'x 177 (5th Cir. 2017) (per curiam)..................................18

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019).......................................................12, 19

*Clark v. Tarrant County*,
  798 F.2d 736 (5th Cir. 1986)............................................................ 12

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949) ......................................................................3

*Cohens v. Virginia*
  (6 Wheat.) 19 U.S. 264 (1821) ................................................... 9, 13

*COMSAT Corp. v. Nat'l Sci. Found.*,
  190 F.3d 269 (4th Cir. 1999)........................................................14, 18

*Crowe & Dunlevy, P.C. v. Stidham*,
  640 F.3d 1140 (10th Cir. 2011) ...................................................... 15

*Daves v. Dallas County*,
   984 F.3d 381 (5th Cir. 2020) ..................................................1, 7, 12

*Davis Enters. v. U.S. E.P.A*,
   877 F.2d 1181 (3d Cir. 1989) ............................................................29

*Davis v. Tarrant County*,
   565 F.3d 214 (5th Cir. 2009) ...................................... 10, 20, 21, 22, 23

*Davis v. U.S. Marshals Serv.*,
   849 F. App'x 80 (5th Cir. 2021) (per curiam) .................................18

*Dugan v. Rank*,
   372 U.S. 609 (1963)........................................................9, 13, 14, 17

*Dunn v. Kennedy*,
   No. 07-50548, 2008 WL 162855 (5th Cir. Jan. 17, 2008) ....................23

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
   34 F.3d 774 (9th Cir. 1994)..............................................................18

*Forrester v. White*,
   484 U.S. 219 (1988) ........................................................................20

*Franchise Tax Bd. v. Hyatt*,
   139 S. Ct. 1485 (2019) ................................................................12, 13

*Gary W. v. State of La., Dep't of Health & Human Res.*,
   861 F.2d 1366 (5th Cir. 1988) ....................................................29, 30

*Garza v. Morales*,
   923 S.W.2d 800 (Tex. App.—Corpus Christi 1996, no pet.)............................22

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ........................................................................20

*Hawaii v. Gordon*,
   373 U.S. 57 (1963) (per curiam)......................................................25

*Hefley v. Textron, Inc.*,
   713 F.2d 1487 (10th Cir. 1983)........................................................16

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013)........................................................................16

*Linder v. Calero-Portocarrero*,
   251 F.3d 178 (D.C. Cir. 2001)..........................................................18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................26

*Marceaux v. Lafayette City-Par. Consol. Gov't*,
   731 F.3d 488 (5th Cir. 2013) ...........................................................11

*McCullough v. Finley*,
    907 F.3d 1324 (11th Cir. 2018) ........................................................ 22

*McDonald v. White*,
    465 F. App'x 544 (7th Cir. 2012) .................................................... 23

*McGehee v. Neb. Dep't of Corr. Servs.*,
    968 F.3d 899 (8th Cir. 2020) ...........................................15, 16, 17

*Mi Familia Vota v. Abbott*,
    977 F.3d 461 (5th Cir. 2020) ..................................................... 25, 26

*Mireles v. Waco*,
    502 U.S. 9 (1991) ....................................................................... 19, 20

*In re Missouri Dep't of Nat. Res.*,
    105 F.3d 434 (8th Cir. 1997) ........................................................... 17

*Moore v. Armour Pharm. Co.*,
    927 F.2d 1194 (11th Cir. 1991) ................................................. 18, 29

*Moore v. La. Bd. of Elementary & Secondary Educ.*,
    743 F.3d 959 (5th Cir. 2014) ........................................................... 11

*Morrison v. Walker*,
    704 F. App'x 369 (5th Cir. 2017) (per curiam) ................................20

*ODonnell v. Harris County*,
    892 F.3d 147 (5th Cir. 2018) ......................................................... 1, 5

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) .......................................................................... 3

*Pugh v. Rainwater*,
    572 F.2d 1053 (5th Cir. 1978) (en banc) ........................................27

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) ........................................................... 25

*Robinson v. Comm'r of Internal Revenue*,
    70 F.3d 34 (5th Cir. 1995) ...............................................................30

*Sanders v. Agnew*,
    306 F. App'x 844 (5th Cir. 2009) (per curiam) ...............................30

*Sparks v. Character & Fitness Comm.*
    859 F.2d 428 (6th Cir. 1988) ........................................................... 21

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ........................................................................ 26

*Testa v. Katt*,
    330 U.S. 386 (1947) ........................................................................ 25

*TTEA v. Ysleta del Sur Pueblo,*
  181 F.3d 676 (5th Cir. 1999) ............................................................ 15
*U.S. E.P.A. v. Gen. Elec. Co.,*
  197 F.3d 592 (2d Cir. 1999) ............................................................. 18
*United States v. Anderson,*
  560 F.3d 275 (5th Cir. 2009) ............................................................30
*United States v. Morgan,*
  313 U.S. 409 (1941) ................................................................ 29, 30
*United States v. Segura,*
  747 F.3d 323 (5th Cir. 2014) ............................................................ 16
*Vann v. Kempthorne,*
  534 F.3d 741 (D.C. Cir. 2008) .......................................................... 25
*Webb v. City of Maplewood,*
  889 F.3d 483 (8th Cir. 2018) ............................................................ 17
*Whole Woman's Health v. Smith,*
  896 F.3d 362 (5th Cir. 2018) ..................................... 3, 11, 24, 27, 28
*Williamson v. U.S. Dep't of Agric.,*
  815 F.2d 368 (5th Cir.1987) .............................................................20
*Wiwa v. Royal Dutch Petroleum Co.,*
  392 F.3d 812 (5th Cir. 2004) ............................................................ 24
*Ex parte Young,*
  209 U.S. 123 (1908) ........................................................... 6, 7, 25

## Constitutional Provisions, Statutes, and Rules:

U.S. Const.:
  amend. XI ...................................................... 9, 12, 15, 16, 17, 19
  amend. XIV ..................................................................................5
Tex. Const. art I, § 11...........................................................................4
5 U.S.C.:
  § 301 ............................................................................................ 18
  § 702............................................................................................ 18
28 U.S.C. § 1291 ..................................................................................3
Tex. Code Crim. Proc.:
  art. 2.09 .........................................................................................4
  art. 15.17(a) ...................................................................................4
  art. 17.028 .....................................................................................5

art. 17.03 ...................................................................................................... 4

art. 17.04 ...................................................................................................... 4

art. 17.05 ...................................................................................................... 4

art. 17.15 ...................................................................................................... 5

art. 17.15(1) ............................................................................................ 4, 22

art. 17.15(2) .................................................................................................. 4

art. 17.15(3) ............................................................................................ 4, 22

art. 17.15(4) .................................................................................................. 4

art. 17.15(5) ............................................................................................ 4, 22

art. 17.031(a) ................................................................................................ 4

Fed. R. Civ. P.:

45.......................................................................... 3, 7, 8, 14, 18, 19, 24

45(d) ............................................................................... ii, 2, 8, 10, 24

45(d)(3)(A)(iv) ......................................................................................24

## Other Authorities:

Act of August 30, 2021, 87th Leg. 2d C.S., ch. 11, § 5, 2021 Tex. Sess.
Law Serv. (SB 6) ............................................................................................5

## Introduction

This lawsuit is the third iteration of litigation brought by activist groups in recent years seeking to use the federal courts to impose bail reform on Texas's most populous counties. *See ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018); *Daves v. Dallas County*, 984 F.3d 381 (5th Cir. 2020), *reh'g granted and opinion vacated*, 988 F.3d 834 (5th Cir. 2021). In this case, like the others, Plaintiffs sued a spate of county and state-level actors, including here twenty-three Harris County Criminal Court Judges ("Felony Judges"), alleging that the County's use of cash bail unconstitutionally detains indigent arrestees based upon their wealth. But in this case, *un*like the others, Plaintiffs agreed to voluntarily dismiss the Felony Judges as parties following this Court's decision in *Daves*, which held that state district court judges were state actors entitled to sovereign immunity from suit. 984 F.3d at 397-400.

To circumvent that holding, just eight days after voluntarily dismissing the Felony Judges as parties, Plaintiffs began serving third-party subpoenas on them, seeking depositions and the production of documents on topics they had previously sought from the Felony Judges when they were parties. But because Plaintiffs cannot evade the limits of sovereign immunity by dismissing state officials from a lawsuit and then serving them with third-party discovery, the Felony Judges moved to quash those third-party subpoenas.

The district court's refusal to quash the subpoenas was erroneous. Though it is a question of first impression in this Circuit, analogous precedent from this Court's sister circuits demonstrates that Plaintiffs' third-party subpoenas constitute "suits" to which the Felony Judges' sovereign immunity attaches. And because no waiver or

congressional abrogation of that immunity is at issue here, enforcement of Plaintiffs' third-party subpoenas is barred.

The Felony Judges' judicial immunity provides a second, independent basis for reversal. The Felony Judges promulgate—but do not enforce—the felony bail schedule that is used by Harris County Hearing Officers to set bail in individual cases. And the act of promulgating a felony bail schedule is so inextricably intertwined with the judicial act of setting bail that the capacious doctrine of judicial immunity shields the Felony Judges from Plaintiffs' third-party discovery demands.

The district court should have quashed the third-party subpoenas for a third reason: they constitute an undue burden under Federal Rule of Civil Procedure 45(d). The information sought from the Felony Judges is both irrelevant to Plaintiffs' claims against Harris County and its Sherriff and unnecessary because they have already deposed six individuals—including one Felony Judge who did not object—and obtained more than 200,000 documents (including nearly 4,000 from the Felony Judges when they were parties). The burden on the Felony Judges easily outweighs any purported benefits from irrelevant and unnecessary third-party discovery. And at a minimum, the district court should have quashed the deposition subpoenas, the enforcement of which are barred under the mental processes rule.

In sum, Plaintiffs' attempt to hale non-party state district judges before a federal court to answer third-party discovery is barred by several independent legal doctrines. Accordingly, this Court should reverse the district court's denial of the Felony Judges' motion to quash.

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction under the collateral order doctrine of 28 U.S.C. § 1291. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). The district court's order denying the non-party Felony Judges' sovereign and judicial immunity and compelling them to sit for depositions and produce tens of thousands of pages of documents is conclusive, resolves an important issue separate from the merits, and is "effectively unreviewable" on appeal from the final judgment in this case. *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018); *see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143-45 (1993) (orders denying state sovereign immunity and absolute or qualified immunity are immediately appealable under the collateral-order doctrine).

## ISSUES PRESENTED

1.  Whether non-party state judges may be haled into federal court to respond to third-party discovery over their objections on sovereign immunity grounds.

2.  Whether state judges are entitled to judicial immunity from third-party discovery concerning their promulgation of guidelines for bail hearings in felony cases.

3.  Whether the district court erred in refusing to quash third-party subpoenas against state judges under Federal Rule of Civil Procedure 45, when that discovery is irrelevant to Plaintiffs' claims against the parties to the suit and when Plaintiffs have already obtained a substantial amount of discovery, including from the Felony Judges themselves.

4.  Whether the mental processes rule bars the compelled deposition testimony of state judges.

## Statement of the Case

### I.  Statutory Background

Under Texas law, nearly all prisoners are "bailable by sufficient sureties." Tex. Const. art I, § 11. To ensure that arrestees do not face excessive waits for release, Texas law empowers most members of the Texas judiciary to set bail. Tex. Code Crim. Proc. art. 17.031(a). Each is deemed a "magistrate" for this purpose. *Id.* art. 2.09. Within 48 hours of arrest, arrestees are to be brought before a magistrate of the county where he or she was arrested, or, if more "expeditious[]," to a magistrate in another county. *Id.* art. 15.17(a).

In Harris County, magistrates called "Hearing Officers" conduct these probable-cause hearings, where they formally notify the arrestee of the charges, make a probable-cause determination, and set bail. ROA.1920-21. The Hearing Officer has discretion to release most prisoners "on personal bond without sureties or other security," Tex. Code Crim. Proc. art. 17.03, or to require a bail bond, *id.* arts. 17.04-.05. In determining the appropriate conditions of release, Hearing Officers must consider the State's interests in (a) having "reasonable assurance" that the arrestee will appear at trial, taking into account (b) "the nature of the offense and the circumstances under which it was committed," and (c) the "future safety of a victim . . . and the community." *Id.* art. 17.15(1), (3), (5). And they are expressly instructed to consider the defendant's "ability to make bail" and told that "[t]he power to require bail is not to be used" as an "instrument of oppression." *Id.* art. 17.15(2), (4).

To promote efficient and consistent application of the Legislature's criteria, the Felony Judges have promulgated a schedule of recommended bail for felonies

committed within their geographic jurisdiction. ROA.1915; *see also* ROA.122-23 (felony bail schedule). While Hearing Officers in Harris County utilize this schedule when setting bail in individual cases, the Felony Judges merely "promulgate," but do not enforce, this felony bail schedule. ROA.1903, 1908. Plaintiffs concede that in 2017 the Felony Judges "expanded the Hearing Officers' authority to determine money bail amounts and other conditions of release" so that the Hearing Officers would not mechanically apply the bail schedule. ROA.1921-22; *see also* ROA.3143-56 (district court describing plaintiffs' allegations and applicable law regarding felony bail procedures in Harris County in since-vacated order on Felony Judges' motion to dismiss); *ODonnell*, 892 F.3d at 153 (describing misdemeanor bail procedures in Harris County). And this past August, the Texas Legislature promulgated additional procedures for the conduct of Article 17.15 magistrations. Tex. Code of Crim Proc. art. 17.028 (to be codified per Act of August 30, 2021, 87th Leg. 2d C.S., ch. 11, § 5, 2021 Tex. Sess. Law Serv. (SB 6)).

## II.  Procedural History

### A.  Plaintiffs file suit against the Felony Judges and obtain expedited discovery; the Felony Judges move to dismiss.

Plaintiffs are five indigent individuals who were arrested for felony offenses in Harris County between January 2019 and January 2020 and then assessed a cash-bail condition of release by unnamed Hearing Officers. ROA.1910-14. In June 2020 Plaintiffs filed the operative complaint against Harris County, its Sherriff, and the Felony Judges—twenty-three state district court judges who preside over felony cases. ROA.1904-07. The complaint brings claims under the Fourteenth Amendment's

Due Process and Equal Protection Clauses, and it alleges that the County's bail system for felony arrestees unconstitutionally detains them in jail based upon their indigence. ROA.1943-45.

Just two weeks after filing their operative complaint, Plaintiffs moved to obtain expedited discovery against the Felony Judges, arguing that the COVID-19 pandemic supplied a basis for ordering discovery before the pleadings and parties were settled. ROA.2045-52. Over the Felony Judges' objections, ROA.2241-45, the district court ordered them to respond to interrogatories and requests for production and also ordered the depositions of two Felony Judges who did not object, ROA.2301. Two days after that order, the Felony Judges moved to dismiss the complaint arguing, among other grounds, that the complaint against these state-actor district court judges was barred by sovereign immunity. ROA.2321-30. While that motion was pending, the Felony Judges produced 1,934 documents and responded to Plaintiffs' interrogatories. *See* ROA.3088.

## B. The district court denies the Felony Judges' motion to dismiss, the Felony Judges appeal, and the parties agree to dismiss the appeal following the panel's decision in *Daves*.

On November 10, 2020, the district court denied the Felony Judges' motion to dismiss, holding, as relevant here, that the Plaintiffs' claims satisfied the narrow exception to sovereign immunity announced in *Ex parte Young*, 209 U.S. 123 (1908). ROA.3171-78. That same day, the Felony Judges filed a notice of appeal. ROA.3205. Thereafter, on December 3, 2020, Plaintiffs served twenty-seven requests for

production on the Felony Judges. ROA.3300-07. In response, the Felony Judges moved for a stay pending the resolution of their appeal by this Court. ROA.3289-95.

While the Felony Judges' motion to stay was pending before the district court, this Court issued its decision in *Daves v. Dallas County*, which held that the state-actor Felony Judges were entitled to sovereign immunity from suit and that the *Ex parte Young* exception did not apply because the Felony Judges only promulgated, but did not enforce, the felony bail schedule. 984 F.3d at 397-400. Because the plaintiffs' claims in *Daves* were nearly identical to the ones brought by Plaintiffs here, Plaintiffs agreed to dismiss the Felony Judges from this lawsuit in exchange for the Felony Judges dismissing their appeal. ROA.3474-75. On February 2, 2021, the district court granted Plaintiffs' motion to voluntarily dismiss the Felony Judges, and at the Felony Judges' request also vacated its order denying their motion to dismiss. ROA.3566.

## C.  Plaintiffs serve third-party subpoenas, the Felony Judges move to quash, and the district court denies the motion.

Though Plaintiffs' voluntary dismissal should have marked the end of the Felony Judges' involvement in this lawsuit, Plaintiffs had other plans. Unable to get around sovereign immunity by suing the Felony Judges directly as parties after *Daves*, Plaintiffs sought to sidestep this jurisdictional hurdle by serving third-party discovery on the Felony Judges under Federal Rule of Civil Procedure 45. Thus, eight days after voluntarily dismissing the Felony Judges, Plaintiffs began serving third-party subpoenas on them, which by the end of February amounted to twenty-seven requests for production served on seventeen of the Felony Judges along with

four deposition subpoenas served on four others. ROA.4043-4712. Plaintiffs have conceded that this third-party discovery "paralleled," "mirrored," and was materially identical to the discovery that they had served on the Felony Judges when they were parties. ROA.4971. And Plaintiffs have since confirmed that, even though the Felony Judges are no longer parties to this case, they believe the district court "still must hold that the [Felony] Judges' conduct—including the bail schedule and their practices in their own courtrooms—violates the Constitution." ROA.4979.

The Felony Judges moved to quash these third-party subpoenas, arguing that enforcement of the subpoenas was barred by sovereign immunity, foreclosed due to the Felony Judges' judicial immunity, and should be quashed under Rule 45(d) because the discovery requests seek irrelevant information and are overbroad and duplicative. ROA.4005-41, 6818-43.

The district court denied the Felony Judges' motion. As for sovereign immunity, the court expressed uncertainty about whether that doctrine's protections applied here, and ultimately concluded that it could simply "balanc[e] sovereign immunity concerns with the limits set out in the Federal Rules of Civil Procedure." ROA.9581-89. The court next held that judicial immunity was inapplicable because the Felony Judges' promulgation of bail schedules was a nonjudicial, administrative task to which judicial immunity does not apply. ROA.9589-91. And finally, the court refused to quash the subpoenas under Rule 45, instead opting to narrow the subpoenas and order the Felony Judges to begin producing documents on a rolling basis starting on June 28, 2021. ROA.9612-13.

The Felony Judges timely appealed the district court's denial of their motion to quash and concurrently asked the district court to stay its order pending the resolution of this appeal. ROA.9614-15, 9617-22. The district court granted the Felony Judges' motion to stay third-party discovery against the Felony Judges, reasoning that "the felony judges have raised a nonfrivolous sovereign immunity issue on appeal" and that "allowing discovery to proceed while the appeal is pending . . . may moot the sovereign immunity issue." ROA.9680-81.

## Summary of the Argument

This Court should reverse the district court's denial of the Felony Judges' motion to quash Plaintiffs' third-party subpoenas for at least four reasons:

**I.** The Eleventh Amendment shields nonconsenting states from "suit" in a wide variety of cases. U.S. Const. amend. XI. The third-party subpoenas served on the Felony Judges in this case are just such a "suit": they are a form of "judicial process" that compels a governmental entity to appear in federal court, obey any forthcoming discovery orders, and expend public resources to act in a way that it otherwise would not. *See Dugan v. Rank*, 372 U.S. 609, 620 (1963); *Cohens v. Virginia* (6 Wheat.) 19 U.S. 264, 407 (1821). Though this Court has not yet had occasion to consider the issue, three of its sister circuits have held that third-party subpoenas served on sovereign actors constitute "suits" to which immunity doctrines attach. *See Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155 (10th Cir. 2014) (tribal immunity); *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012) (tribal immunity); *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989) (federal sovereign immunity).

The district court erred in abjuring these analogous precedents on the basis that they did not involve the state sovereign immunity doctrine, but instead other immunity doctrines. The principles articulated in those cases about the nature of a "suit" are just as applicable in the context of state sovereign immunity as they are in the context of tribal immunity and federal sovereign immunity. And because the state sovereign immunity doctrine is fully applicable here, the district court erred in concluding that it could use Rule 45(d) to balance away the Felony Judges' "sovereign immunity concerns."

**II.** Plaintiffs' third-party subpoenas are separately barred by the doctrine of judicial immunity. The district court erred in holding that judicial immunity did not apply to the Felony Judges' conduct here because their promulgation of a felony bail schedule was a "nonjudicial," "administrative and policymaking" act. The setting of bail is indisputably a judicial function, and because the promulgation of a felony bail schedule is so "inextricably linked" with the setting of bail—under Plaintiffs' *own* theory of the case—it too is shielded by judicial immunity. *Davis v. Tarrant County*, 565 F.3d 214, 226 (5th Cir. 2009).

**III.** The district court should also have quashed Plaintiffs' third-party subpoenas as unduly burdensome under Federal Rule of Civil Procedure 45(d). The discovery sought from the Felony Judges is irrelevant to Plaintiffs' claims, which are premised upon the Hearing Officers allegedly unconstitutional *application* of the felony bail schedules—not the Felony Judges' promulgation of those schedules. Moreover, Plaintiffs' claimed "need" for this discovery is highly suspect, since they have already taken six depositions (including one of a consenting Felony Judge) and

obtained over 200,000 pages of documents (including nearly 4,000 from the Felony Judges). The irrelevance and questionable need for discovery alone outweighs any purported benefit to Plaintiffs. *Whole Woman's Health*, 896 F.3d at 375.

**IV.** At the very least, the district court should have quashed the deposition subpoenas, which seek to compel the testimony of judicial officers in violation of the mental processes rule. The district court's failure to do so stems from its incorrect conclusion that the Felony Judges' promulgation of the felony bail schedule is merely an administrative and policymaking act—not a judicial one. But that conclusion gets things exactly backwards and therefore can supply no basis for refusing to quash the deposition subpoenas.

## Standard of Review

Though this Court "review[s] the district court's decision on a motion to quash for abuse of discretion . . . . '[t]he district court's legal conclusions should be reviewed *de novo*, and its factual findings should not be disturbed unless they are clearly erroneous.'" *Whole Woman's Health*, 896 F.3d at 369 (quoting *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 491 (5th Cir. 2013)). Questions of sovereign immunity and judicial immunity are legal questions that this Court reviews *de novo*. *See Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 962 (5th Cir. 2014) (sovereign immunity); *Brewer v. Blackwell*, 692 F.2d 387, 390 (5th Cir. 1982) (judicial immunity).

11

**ARGUMENT**

## I.   The Felony Judges Are Entitled to Sovereign Immunity.

The Eleventh Amendment limits a federal court's ability to hear a "suit in law or equity, commenced or prosecuted against" a State. U.S Const. amend XI. This amendment was designed "to preserve the States' traditional immunity from private suits," which "bars suits against nonconsenting States in a wide range of cases." *Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485, 1496 (2019). Thus, "unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). In this case, the district court assumed without deciding that the Felony Judges are state actors who are entitled to sovereign immunity.[1] But it ultimately equivocated on the question whether a third-party subpoena constitutes a "suit" to which sovereign immunity attaches and then held that it could "balanc[e] sovereign immunity concerns with the limits set out in the Federal Rules of Civil Procedure." ROA.9586. That conclusion, and mode of analysis, is fundamentally flawed.

### A.   Third-party subpoenas are "suits" to which sovereign immunity attaches.

Although this Circuit has not yet considered whether third-party subpoenas served upon on non-party sovereigns constitute a "suit" to which sovereign

---

[1] That assumption was correct. This Court has long recognized that "district judges . . . are undeniably elected state officials" for purposes of state sovereign immunity. *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986). And the Court recently reaffirmed this longstanding principle in the now-vacated panel opinion in *Daves*, 984 F.3d at 396.

immunity attaches, other circuits have. In *Bonnet*, the Tenth Circuit explained that "[e]arly American jurisprudence defined a 'suit' as 'the prosecution of some demand in a Court of justice.'" 741 F.3d at 1159 (quoting *Cohens*, 19 U.S. at 407). And it concluded that "'the term 'suit' embodies the broad principle that the government is not subject to 'legal proceedings, at law or in equity' or '*judicial process*' without its consent." *Id.* (emphasis original and citation omitted); *see also Hyatt*, 139 S. Ct. at 1493 ("The Founders believed that . . . 'common law sovereign immunity' . . . prevented States from being amenable to *process* in any court without their consent" (emphasis added)). The court reasoned that "interpreting the term 'suit' broadly comports with the core notion of sovereign immunity that in the absence of governmental consent, the courts lack jurisdiction to 'restrain the government from acting, or to compel it to act.'" *Bonnet*, 741 F.3d at 1159. Accordingly, the court held that "a subpoena duces tecum is a form of judicial process" that "trigger[]s . . . sovereign immunity." *Id.* at 1160.

Likewise, the Eighth Circuit has held that "a federal court's third-party subpoena in private civil litigation is a 'suit' that is subject to Indian tribal immunity." *DeJordy*, 675 F.3d at 1105. This result followed from the Supreme Court's decision in *Dugan v. Rank*, which explained that "a suit is against the sovereign if the judgment sought would expend itself on the public treasury . . . or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* at 1102 (quoting *Dugan*, 372 U.S. at 620). The third-party subpoenas in *DeJordy* fit comfortably within this definition of a "suit," since they would "command a government unit to appear in federal court

and obey whatever judicial discovery commands may be forthcoming." *Id.* at 1103. Additionally, "[t]he potential for severe interference with government functions [wa]s apparent." *Id.*

Finally, in *Downie* the Fourth Circuit held that sovereign immunity barred the enforcement of a third-party subpoena against a federal employee. 873 F.2d at 68. Relying on *Dugan*, the court reasoned that "the nature of the subpoena proceeding against a federal employee to compel him to testify . . . is inherently that of an action against the United States," since "such a proceeding 'interfere[s] with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Id.* at 70-71 (quoting *Dugan*, 372 U.S. at 620); *see also COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) ("subpoena proceedings fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign").

Under the straightforward logic of *Bonnet*, *DeJordy*, and *Downie*, the district court should have quashed Plaintiffs' third-party subpoenas. Service of those Rule 45 subpoenas constitutes a "suit" because those subpoenas initiate the "judicial process" against the Felony Judges "without [their] consent." *Bonnet*, 741 F.3d at 1159. Indeed, the district court's enforcement of those subpoenas "command[s] a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming." *DeJordy*, 675 F.3d at 1103. And enforcement of those subpoenas would interfere with the Felony Judges' administration of their public duties. *Downie*, 873 F.2d at 70-71.

The district court veered from this path. Instead, it concluded that *Bonnet* and *DeJordy* were "inconclusive" because those cases involved tribal immunity, not state sovereign immunity. ROA.9583-84. This is a distinction without a difference. After all, "[t]he scope of tribal immunity . . . is more limited" than state sovereign immunity. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011). And as this Court has cautioned, "[t]here is no reason that the federal common law doctrine of tribal sovereign immunity . . . should extend further than the . . . doctrine of state sovereign immunity." *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 680 (5th Cir. 1999). As a result, there is simply no justification for the district court's decision to "define the same term, 'suit,' to mean two different things, depending on whether judicial process is being exercised against the . . . [] States or an Indian tribe." *Bonnet*, 741 F.3d at 1160.

If anything, the district court's recognition that non-party subpoenas served against tribes constitute "suits" to which tribal immunity attaches should have cut in *favor* of, not against, a finding of sovereign immunity here. *See id.* at 1161 ("the Eleventh Amendment may well shield a state agency from discovery in federal court"); *DeJordy*, 675 F.3d at 1104-05 (noting that the Supreme Court "might well conclude that the Eleventh Amendment applies, or it might apply a broader form of state sovereign immunity as a matter of comity" to "disruptive third-party subpoenas . . . served on a state agency in private federal court civil litigation"); *see also McGehee v. Neb. Dep't of Corr. Servs.*, 968 F.3d 899, 901 (8th Cir. 2020) (Stras, J., concurring) ("I have doubts whether, under basic sovereign-immunity principles, a state may be haled into federal court solely for the purpose of answering a third-party

subpoena."), *reh'g granted and opinion vacated* (Oct. 5, 2020), *on reh'g,* 987 F.3d 785 (8th Cir. 2021).

The district court also cited two[2] other cases to support the notion that a third-party subpoena does not constitute a "suit," ROA.9582, but neither does. In *Barnes v. Black*, 544 F.3d 807 (7th Cir. 2008), the issue before the Seventh Circuit was *not* whether state sovereign immunity bars the enforcement of third-party subpoenas. Instead, the court considered whether it had appellate jurisdiction over the denial of a writ of habeas corpus *ad testificandum* and concluded that it did not. *Id.* at 812. Thus, that court's off-handed suggestion that the Eleventh Amendment would pose no barrier to a judicial order commanding a nonparty State to produce documents was dicta. *Id.*; *see Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 548 (2013) ("we are not necessarily bound by dicta should more complete argument demonstrate that the dicta is not correct"). In fact, that statement was offered only as an analogy in response to the State of Wisconsin's argument—*as an amicus*—that the Eleventh Amendment barred the enforcement of a writ of habeas corpus *ad testificandum*. *Barnes*, 544 F.3d at 812; *cf. United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) ("A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the

---

[2] The district court also cited a third case, *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1497 n.2 (10th Cir. 1983), and observed that in *Hefley* the court "assumed that third-party discovery in federal court does not implicate sovereign immunity." ROA.9582. But the district court rightly acknowledged that the Tenth Circuit's decision in *Bonnet* undercuts that assumption. ROA.9582.

full and careful consideration of the court that uttered it."). Even if it were not dicta, the Seventh Circuit's off-the-cuff assessment of an issue that was not even before it should not prevail over the well-considered views of the Tenth, Eighth, and Fourth Circuits when the issue was squarely before those courts.

The district court's other case—*In re Missouri Department of Natural Resources*, 105 F.3d 434, 436 (8th Cir. 1997)—is similarly unavailing. In the first place, the Eighth Circuit's bald statement that "[t]here is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court," *id.* at 436, is wrong, as the foregoing authorities establish. *Supra* at 15–16. Later Eighth Circuit opinions have also expressed doubt about whether *Missouri DNR* was correctly decided. *See, e.g.*, *DeJordy*, 675 F.3d at 1104-05, *Webb v. City of Maplewood*, 889 F.3d 483, 488 (8th Cir. 2018) ("any State official or entity the plaintiffs subpoena for discovery may raise a claim of sovereign immunity at that time"); *McGehee*, 968 F.3d at 901 (Stras, J, concurring). And that is because *Missouri DNR*'s perfunctory analysis is wrong. The court reasoned that the state agency there would not enjoy sovereign immunity because it had "not shown how production of these documents infringes on the State of Missouri's autonomy or threatens its treasury." *Missouri DNR*, 105 F.3d at 436. But "[t]he potential for severe interference with government functions is apparent" by orders "command[ing] a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming." *DeJordy*, 675 F.3d at 1103. And regardless, these third-party subpoenas "compel" state officials to act in a manner that they otherwise would not. *Dugan*, 372 U.S. at 620.

## B. District courts may not "balance" away state sovereign immunity with the Federal Rules of Civil Procedure.

Because the district court deemed the relevant authorities "inconclusive" on the question whether third-party subpoenas constitute a "suit," it looked to "[c]ases analyzing third-party subpoenas to federal government officials" and determined that it could simply "balanc[e] sovereign immunity concerns with the limits set out in the Federal Rules of Civil Procedure." ROA.9585-88. But these authorities, far from supporting the district court's approach, underscore its errors.

Each of the cases the district court cites, ROA.9585-86, concerned third-party discovery served on federal agencies or their officials.[3] Sovereign immunity did not bar any of that third-party discovery because Congress *waived* federal agencies' sovereign immunity in the Administrative Procedure Act, 5 U.S.C. § 702, as the district court itself recognized. ROA.9585 ("sovereign immunity applies to Rule 45 subpoenas compelling discovery from federal agencies and . . . the immunity is subject to waiver and review under the administrative Procedure Act"). Absent Congressional waiver, these agencies *would* retain sovereign immunity. *See U.S. E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 597-98 (2d Cir. 1999) ("the only identifiable waiver of sovereign

---

[3] *Davis v. U.S. Marshals Serv.*, 849 F. App'x 80, 87 n.3 (5th Cir. 2021) (per curiam); *CF Indus., Inc. v. DOJ, Bureau of Alcohol, Tobacco, Firearms & Explosives*, 692 F. App'x 177, 181-82 (5th Cir. 2017) (per curiam); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 181 (D.C. Cir. 2001); *U.S. E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 597-98 (2d Cir. 1999); *COMSAT Corp.,* 190 F.3d at 277; *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991); *cf. Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779-80 (9th Cir. 1994) (holding that the federal government's sovereign immunity from third-party discovery was also waived by the Federal Housekeeping Statute, 5 U.S.C. § 301).

immunity that would permit a court to require a response to a subpoena in an action in which the government is not a party is found in the APA"). These cases are inapposite here because the Felony Judges' sovereign immunity has not been waived. Only where sovereign immunity is *in*applicable—unlike here—would a district court be free to use Rule 45 to tailor the burdens of third-party discovery on a non-party sovereign.

For that reason, the district court's suggestion that the Rules of Civil Procedure may be used as a scalpel to chip away at the Felony Judges' sovereign immunity is plainly wrong. State sovereign immunity is not something that federal courts are entitled to balance away through multi-factor tests or comparative judgments about relative burdens. Rather "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . *except as altered by the plan of the Convention or certain constitutional amendments.*" *Alden v. Maine*, 527 U.S. 706, 713 (1999) (emphasis added). Stated differently, "unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit." *City of Austin*, 943 F.3d at 997. Because no waiver or congressional abrogation is in view here, the Court should have quashed Plaintiffs' third-party subpoenas.

## II. The Felony Judges Are Judicially Immune from Suit.

The Felony Judges are also separately entitled to judicial immunity from Plaintiffs' third-party discovery. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This includes protection from discovery: "the

protection afforded government officials by the doctrines of absolute and qualified immunity would be greatly depreciated if it did not include protection from discovery." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382–83 (5th Cir.1987); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."). "A judge's actions are protected by absolute judicial immunity, which is overcome in only two scenarios: (a) where the actions are 'not taken in the judge's judicial capacity' or (b) whether they are 'taken in the complete absence of all jurisdiction.'" *Morrison v. Walker*, 704 F. App'x 369, 372-73 (5th Cir. 2017) (per curiam) (citing *Mireles*, 502 U.S. at 11-12). The district court's decision to deny the Felony Judges judicial immunity rested on the former reason: that the information requested concerned the Felony Judges' "nonjudicial" "administrative and policymaking roles." ROA.9590. But that was erroneous.

To determine whether an act taken by a judge is properly classified as "judicial," the Court considers "the 'nature' and 'function' of the act" and "the particular act's relation to a general function normally performed by a judge." *Davis*, 565 F.3d at 222 (citing *Mireles*, 502 U.S. at 12-13). Judicial decisions undertaken in an administrative capacity are those involved with managing a court, which can be a "large and complex institution." *Ayestas v. Davis*, 138 S. Ct. 1080, 1090 (2018). These include "decisions about such things as facilities, personnel, equipment, supplies, and rules of procedure." *Id.; cf. Forrester v. White*, 484 U.S. 219, 221 (1988) (personnel decision). But when an act performed by a judge outside the context of a specific lawsuit is "inextricably linked to and cannot be separated from" another judicial act,

it "must be considered to be protected by judicial immunity." *Davis*, 565 F.3d at 226.

Four factors guide this analysis: "(1) whether the precise act complained of is a normal judicial function;" (2) "whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;" (3) "whether the controversy centered around a case pending before the court;" and (4) "whether the acts arose directly out of a visit to the judge in his official capacity." *Id.* at 222. Each of these factors points towards a finding that the Felony Judges are judicially immune from Plaintiffs' third-party discovery.

**A.** *Davis*'s analysis of the first factor is instructive. There, this Court held that "[t]he act of selecting applicants for inclusion on a rotating list of attorneys eligible for court appointments" was a judicial act because it was "inextricably linked to and cannot be separated from the act of appointing counsel in a particular case." *Id.* at 226. That was due in part to the fact that "decisions about which attorneys should be placed on the wheel functionally determine which attorney actually will be appointed in a particular case." *Id.* And the decision to include an attorney on that rotating list was "presumably . . . made based upon an attorney['s] conduct in other cases before the court." *Id.* This Court reached that conclusion despite the fact that "the selection decision is not made in the context of a specific suit." *Id.* As the Court noted "courts have not strictly limited judicial immunity to actions taken in the context of a specific lawsuit." *Id.* (citing *Sparks v. Character & Fitness Comm.* 859 F.2d 428, 434 (6th Cir. 1988)).

That analysis applies with equal force here. "The setting of bail is clearly a judicial function." *Garza v. Morales*, 923 S.W.2d 800, 803 (Tex. App.—Corpus Christi 1996, no pet.). And just like the act of selecting applicants for potential court appointment is linked to the appointment itself, the act of promulgating the felony bail schedule is so "inextricably linked" with the actual setting of bail that it too should be considered a judicial act. *Davis*, 565 F.3d at 226. After all, under Plaintiffs' *own* theory, the felony bail schedule "functionally determine[s]," *id.*, the arrestee's amount of bail. *See* ROA.1909, 1921-22; *but see* ROA.1922 (Plaintiffs conceding that in 2017 the Felony Judges "expanded the Hearing Officers' authority to determine money bail amounts and other conditions of release"). And the decision about the appropriate level of bail for certain crimes is "presumably . . . made," *Davis*, 565 F.3d at 226, based upon the Felony Judges' experience regarding the amount necessary to ensure that an arrestee will appear at trial, the nature of the offense, and the safety of the community. *See* Tex. Code Crim. Proc. art. 17.15(1), (3), (5). Thus, it is of no moment that the Felony Judges' promulgation of the felony bail schedule "is not made in the context of a specific suit." *Davis*, 565 F.3d at 226.

This conclusion is consistent with the manner in which other Circuits have resolved the judicial-capacity question in similar contexts. *Cf. McCullough v. Finley*, 907 F.3d 1324, 1332 (11th Cir. 2018) (holding that judge's role in setting a policy that required jailees to "sit-out" unpaid fines was an act taken in a judicial capacity); *accord Caliste v. Cantrell*, 937 F.3d 525, 532 n.7 (5th Cir. 2019) (declining to reach capacity question regarding policy of the expenditure of fines paid to the court);

*McDonald v. White*, 465 F. App'x 544, 548 (7th Cir. 2012) (dismissing claim based on failure to return bail funds).

**B.** Though the district court did not analyze them, the remaining judicial-capacity factors also favor the conclusion that the Felony Judges are entitled to judicial immunity. Plaintiffs have not alleged that the Felony Judges' promulgation of the felony bail schedules was "made anywhere other than in the [Harris] County courthouse building, which is certainly a space adjunct to a judge's chambers." *Dunn v. Kennedy*, No. 07-50548, 2008 WL 162855, at *1 (5th Cir. Jan. 17, 2008). Plaintiffs' attempt to serve third-party discovery on the Felony Judges is also "centered around a case pending in court," *Davis*, 565 F.3d at 224: their arrest and subsequent assessment of a cash-bail condition of release. *See Dunn*, 2008 WL 162855, at *1 (removal of an attorney from a court appointment list was "centered around a case pending in court inasmuch as [the attorney's] removal was based on his conduct stemming from his representation of indigent defendants before the court"). And there can be no dispute Felony Judges were acting in their official capacity as judges—as opposed to their individual capacity—when promulgating the felony bail schedule. *See id.*

Accordingly, the district court erred in denying the Felony Judges judicial immunity.

## III. Plaintiffs' Third-Party Subpoenas Unduly Burden the Felony Judges, and the District Court Erred in Failing to Quash Them.

Even if Plaintiffs could somehow surmount the Felony Judges' sovereign and judicial immunity (they cannot), this Court should still reverse the denial of the

Felony Judges' motion to quash, because the third-party subpoenas constitute an undue burden under Rule 45(d).

Federal Rule of Civil Procedure 45 "require[s]" a district court to quash a third-party subpoena if that subpoena "subjects a person to undue burden." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); Fed. R. Civ. P. 45(d)(3)(A)(iv). This Court has identified six factors that may be relevant to the undue-burden inquiry: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818. Moreover, where the discovery is served on "a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* Here, the relevance, need, and burden factors, coupled with the fact that the Felony Judges are nonparties, overwhelmingly demonstrate that the district court abused its discretion in refusing to quash Plaintiffs' third-party subpoenas. *See Whole Woman's Health*, 896 F.3d at 374-76 (holding that the district court abused its discretion in refusing to quash third-party subpoenas based principally on the "relevance" and "need" factors).

**A.** Start with relevance. The district court held that Plaintiffs' third-party discovery was relevant because Plaintiffs have alleged that the Felony Judges failed (a) to exercise rulemaking authority to ensure Hearing Officers apply felony bail schedules in a constitutional manner or (b) to follow the Constitution when setting bail in their own courtrooms. ROA.9595-96. But the Felony Judges are no longer parties, so what they do in their own courtrooms is hardly relevant to Plaintiffs'

claims against *the County* and *the Sherriff*. That is doubly true here because none of the Plaintiffs is alleged to have had their bail set by a Felony Judge. ROA.1910-14.

Nor can this third-party discovery be relevant on the theory that the Felony Judges' supposed failure to promulgate rules is the proximate cause of Plaintiffs' injuries.[4] Plaintiffs describe their injuries as the imposition of a financial condition-of-release without an on-the-record finding regarding ability to pay and consideration of less restrictive means. ROA.1902, 1909. Yet the operative complaint makes clear that it is the Hearing Officers—not the Felony Judges—who set Plaintiffs' bail. ROA.1903, 1909-14. And as Plaintiffs begrudgingly admit in their operative complaint, in 2017 the Felony Judges gave Hearing Officers "greater discretion" in "determin[ing] money bail amounts and other conditions of release." ROA.1921-22, 1925. The discovery Plaintiffs have already obtained from the Hearing Officers

---

[4] The district court would not have the authority to fashion a remedy to redress the Felony Judges' alleged failure to act even if the Felony Judges were parties. Under the *Ex parte Young* exception to sovereign immunity, courts "may not 'control [a state officer] in the exercise of his discretion.'" *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020) (quoting *Ex parte Young*, 209 U.S. at 158); *see also, e.g.*, *Vann v. Kempthorne*, 534 F.3d 741, 752 (D.C. Cir. 2008). And even outside the *Ex parte Young* context, federal law "does not provide authority for courts to order state officials to promulgate legislation, regulations or executive orders." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020). A sovereign's ability to control its courts is core to the very notion of sovereignty, and "our federalism" prohibits Congress from dictating internal operating procedures in state courts. *Alden*, 527 U.S. at 748-49; *cf. Testa v. Katt*, 330 U.S. 386, 394 (1947). And sovereign immunity prevents this Court from "requir[ing] [a state actor's] official affirmative action" to change those procedures. *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam); *Richardson*, 978 F.3d at 241-42.

confirms that the Hearing Officers exercise their own independent discretion when considering the issue of bail. ROA.4023-24. So if, as Plaintiffs contend here, the Hearing Officers are not conducting bail hearings in the way that Plaintiffs believe the Constitution requires, they should seek more discovery from the Hearing Officers or the County. But the district court should not have permitted them to further harass the Felony Judges, who lack a sufficient connection to Plaintiffs' alleged injuries related to application of the felony bail schedule. *Cf. Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (the authority "to issue, amend[,] or rescind" a policy "is not the power to enforce it").

Plaintiffs also argued in their briefing before the district court that this third-party discovery against the Felony Judges was relevant because in order to "enjoin" the County and Sherriff, the district court "still must hold that the [Felony] Judges' conduct—including the bail schedule and their practices in their own courtrooms—violates the Constitution." ROA.4979. That is nonsensical. The district court cannot hold the Felony Judges' "conduct" unconstitutional in absentia. It would lack Article III jurisdiction to do so: to establish standing the plaintiff's injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Here, Plaintiffs' alleged injuries are fairly traceable, if at all, to the Hearing Officers who actually preside over Plaintiffs' individual bail hearings. ROA.1902, 1910-14. Such a course of action would also violate due process. *See Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) ("we have often repeated the general rule that 'one is not bound by a judgment *in*

*personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'").

**B.** Plaintiffs fare no better on the "need" factor. As the district court acknowledged, Plaintiffs have already obtained a substantial amount of discovery. ROA.9598-99. They have deposed at least six individuals, including representatives from the Harris County Sherriff's Office, Harris County Pretrial Services, the Harris County District Attorney's Office, the Harris County Public Defender, Hearing Officer Courtney St. Julian, and even Felony Judge Brian Warren. *See* ROA.6846-7308 (deposition transcripts). And they have also obtained more than 207,000 pages of documents from Harris County and 3,821 pages of documents from the Felony Judges when they were parties. ROA.4024-26; *cf. Whole Woman's Health*, 896 F.3d at 375 (quashing third-party subpoena where the nonparty "has already produced over 4,000 pages of responsive discovery documents, and [representative] has testified thrice and furnished affidavits"). In the light of the trove of information already available to Plaintiffs, their "'need' to obtain th[is] additional [discovery] is questionable at best." *Whole Woman's Health*, 896 F.3d at 375.

The district court concluded that Plaintiffs had a need for further discovery from the Felony Judges because only the Felony Judges possess the answers to "critical questions" "bear[ing] on whether the felony bail and bond orders that the party defendants enforce are constitutional." ROA.9598. But Plaintiffs are not challenging the use of the felony bond schedule as such, and nor could they. *See Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc) ("Utilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in

meeting its requirements."). Rather, the gravamen of Plaintiffs' challenge is that the bond schedule is being *applied* in individual cases in an unconstitutional manner, *viz.*: without on-the-record findings regarding an ability to pay and whether there are less restrictive means than financial conditions of release. ROA.1902, 1910-14. And as described above, information about how the felony bail schedule is utilized during bail hearings should be directed to the Hearing Officers—the individuals who actually apply the schedule in bail hearings—not the Felony Judges.

**C.** Given both the irrelevance of the third-party discovery and Plaintiffs' tenuous claim of a "need" for discovery from the Felony Judges, the burden on the Felony Judges easily outweighs any benefit to Plaintiffs. "The small or non-existent incremental 'need' for and 'relevance' of this discovery *alone* impose a burden on [the Felony Judges], if [they] must produce documents unnecessary to the litigation." *Whole Woman's Health*, 896 F.3d at 375 (emphasis added).

Responding to the 27 document requests Plaintiffs served on 17 Felony Judges will require the Felony Judges' attorneys to review nearly 40,000 pages of documents, which will take at least four months. ROA.4916, 7317. And the four deposition subpoenas are even more burdensome, as they will require the Felony Judges and their attorneys to spend hours preparing, and then attending, those depositions—time that would have otherwise been spent attending to their official duties and busy dockets. Under such circumstances, "[t]he potential for severe interference with government functions is apparent." *DeJordy*, 675 F.3d at 1103; *see also Downie*, 873 F.2d at 70-71 ("the nature of [a] subpoena proceeding . . . 'interfere[s] with the public administration' and compels the federal agency to act in a manner different from

that in which the agency would ordinarily choose to exercise its public function");
*see also Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197-98 (11th Cir. 1991) (expected
"onslaught of subpoenas" in similar litigation raised substantial concern about "cumulative impact" of individual subpoena); *Davis Enters. v. U.S. E.P.A.*, 877 F.2d
1181, 1187 (3d Cir. 1989) (agency had "legitimate concern with the potential cumulative effect" and "proliferation of testimony by its employees" that compliance
with individual subpoena would entail). The Court should therefore hold that the
district court abused its discretion in refusing to quash these third-party subpoenas.

## IV. The Mental Processes Rule Bars Enforcement of the Deposition Subpoenas.

At a minimum, the district court should have quashed the deposition subpoenas
served on Judges Herb Ritchie, Kelli Johnson, DaSean Jones, and Ramona Franklin,
ROA.4482, 4698, 4703, 4708, because they are barred by the "mental processes"
rule. "As a general rule, any individual competent to be a witness may be compelled
to testify as to facts within his or her knowledge that are relevant to a matter before
the court." *Gary W. v. State of La., Dep't of Health & Human Res.*, 861 F.2d 1366,
1368 (5th Cir. 1988). But "the courts have recognized an exemption from compulsory testimony when necessary to protect the integrity and individual responsibility
of governmental officials whose duties involve the exercise of judicial and quasi-judicial authority." *Id.* (citation omitted).

"[T]his principle, referred to as the 'mental processes rule,'" *id.*, was recognized by the Supreme Court in *United States v. Morgan*, 313 U.S. 409 (1941). There,
the Court held that a district court erred in requiring the Secretary of Agriculture to

submit to a deposition and testify at a trial concerning the lawfulness of a rate-setting order. *Id.* at 422. The Court reasoned that the administrative proceedings in which the Secretary promulgated the order had "a quality resembling that of a judicial proceeding" and that "[s]uch an examination of a judge would be destructive of judicial responsibility." *Id.* Accordingly, the Court held that "[j]ust as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *Id.* (citation omitted).

Though *Morgan* involved the compelled testimony of agency officials, "the mental processes rule has been applied to prevent the involuntary testimony of judicial and quasi-judicial officers." *Gary W.*, 861 F.2d at 1368-69. This Court has even applied the "mental processes" rule to bar the compelled testimony of a "Harris County Criminal Court Judge" like the Felony Judges here. *United States v. Anderson*, 560 F.3d 275, 282 (5th Cir. 2009); *see also Sanders v. Agnew*, 306 F. App'x 844, 855 (5th Cir. 2009) (per curiam) (affirming district court order quashing subpoena against Justice of the Peace on the basis of the mental processes rule); *accord Robinson v. Comm'r of Internal Revenue*, 70 F.3d 34, 38 (5th Cir. 1995) (holding that Tax Court did not err in quashing a third-party subpoena served on a state judge because "[a] judge may not be asked to testify about his mental processes in reaching a judicial opinion").

These authorities should have led the district court to quash the deposition subpoenas at issue here. It did not follow that course because it concluded that the Felony Judges' promulgation of the felony bail schedule was a nonjudicial act to which the mental processes rule does not apply. ROA.9590. But as described above, the

Felony Judges' promulgation of the felony bail schedule is a judicial act. *Supra* at 19-23. For those reasons, the district court erred in failing to quash these deposition subpoenas.

## Conclusion

The Court should reverse the district court's order denying the Felony Judges' motion to quash Plaintiffs' third-party subpoenas.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

/s/ William F. Cole
William F. Cole
Assistant Solicitor General
William.Cole@oag.texas.gov

Counsel for Movants-Appellants

## CERTIFICATE OF SERVICE

On November 1, 2021, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ William F. Cole

WILLIAM F. COLE

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,385 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ William F. Cole

WILLIAM F. COLE